32 C.C.P.A.(Patents)

## In re SCHNEIDER.

Patent Appeal No. 4954.

Court of Customs and Patent Appeals.

March 5, 1945.

C. P. Goepel, of New York City (T. A. Hostetler, of Washington, D. C., of counsel), for appellant.

W. W. Cochran, of Washington, D. C. {E. L. Reynolds, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

BLAND, Associate Judge.

The Primary Examiner of the United States Patent Office finally rejected claims 10 and 11 (the only claims in the case) of appellant's application for a patent relating to blade propellers. The examiner's decision was affirmed by the Board of Appeals, and appellant has here appealed from its decision.

The appealed claims read as follows:

"10. In a blade propeller in which the axes of rotation of the blades and the axis of rotation of the propeller are substantially vertical and parallel with each other, with the blades oscillable about their axes through a cycle of angular movements with the axes of rotation of the blades moving in an orbit of which the quadrants represent forward and rearward movements of the blades, the quadrant being formed by intersecting diameters of the orbit, one diameter being along the longitudinal of the ship and the other diameter being perpendicular thereto, the two quadrants forward in the direction of the ship's movement of the transverse diameter representing the forward movement of the blades, and the two quadrants rearward of the transverse diameter representing the rearward movement of the blades and having a steering center disposed along said transverse diameter; *means positioning the blades so that during their cycle of movements when one blade arrives in its position where a radius of the orbit forms with the transverse diameter an angle of twenty-five degrees, within a tolerance in either direction of fifteen degrees, said blade is in its zero position,* and means for angularly shifting the remaining blades during their rotation in accordance with their cycle based on the zero position of said cycle being at said zero position of the blade, with the longitudinal axis of the blade tangential to the orbit, its perpendicular passing through the steering center, and said tangential point coincident with the curved flow of the water rear of the transverse diameter tangential to said orbit.

"11. In a blade propeller in which the axes of rotation of the blades and the axis

of rotation of the propeller are substantially vertical and parallel with each other, with the blades oscillable about their axes through a cycle of angular movements with the axes of rotation of the blades moving in an orbit, in relation to the flow direction of the medium while the axes of the blades rotate in an orbit around the axis of the propeller, the orbit being divided by diametrical lines at right angles to each other into right and left forward and rearward quadrants, the right quadrants being at the right in the flow direction line passing through the axis of the orbit, and the forward quadrants being forward of the diameter transverse to the flow direction line and opposing the direction of flow, and the rearward quadrants being rearward of said transverse diameter, and having a steering center disposed along said transverse diameter at the right of the flow direction; *the combination of means for positioning the zero position of the blades at a point in the orbit in the left rearward quadrant where the radius of the orbit makes an angle of 25° with said transverse diameter, with a tolerance of 15°, the zero position of the blade being the position where the longitudinal axis of the blade profile is tangential to the orbit and has the perpendicular of that axis pass through the steering center,* and means for angularly oscillating said blades on their axes in accordance with their cycle from and to said zero position during the rotation of the axes of said blades in said orbit, the blades taking a forward positioning in respect to the flow of the medium in the said forward and rearward left quadrants, and a rearward positioning in the forward and rearward right quadrants, whereby the zero position of the blades is substantially at the point where the medium tangents with the orbit at the rearward part of the propeller." (Italics ours.)

The sole reference is appellant's prior patent, No. 1,681,500, issued August 21, 1928.

The subject matter of the claims relates to a blade propeller, such as is shown in Schneider's said patent.

The rejection on the part of the examiner was upon two grounds: first, that the claims were functional; second, that they were unpatentable over Schneider's own patent.

Upon appeal, the board, in its first decision, affirmed the action of the examiner in rejecting the claims as being functional

but specifically stated that the rejection on the ground of unpatentability over the Schneider patent would not be sustained, yet its concluding statement was "The decision of the examiner is affirmed". Upon petition for reconsideration, the board rendered a second opinion. When the two opinions are considered together, we may state that it is difficult to determine just what the board did mean. Nevertheless, we conclude from statements which we shall quote, that the board modified its holding with respect to the claims being functional and, *in substance,* reversed itself with respect to the rejection upon the prior art.

To us the questions presented seem not to be greatly involved, and we feel certain that the tribunals were correct in holding that the appealed claims are not inventive over appellant's patent. Therefore, we need not consider the argument relative to the alleged functional character of the claims, which has been much belabored by the tribunals and by the respective parties here. We shall therefore proceed to consider the scope and nature of the instant claims and the disclosure of the Schneider patent.

We have italicized in the above-quoted claims the limitations which are claimed to define the novel and inventive features in the instant application over appellant's patent.

Appellant, in his brief, defines his invention as follows: "The claimed invention is the combination of the means for positioning the blades when in zero position rearward of the ends of the transverse diameter of the orbit at an angle thereto of 25°, with a tolerance of 15°, combined with the means for angularly oscillating said blades on their axes in accordance with their cycle from and to said zero positions during the rotation of the axes of said blades in said orbit. * * * The real invention in the case at bar consists in the new arrangement producing the new result, and claims 10 and 11 point out the new arrangement as the limit of their request for protection."

The examiner pointed out that the claims called for nothing more than a readjustment of the old means disclosed by the patent. If we thought the question were sufficiently close, we should here set out the complex diagrammatic drawings, involving highly technical geometric figures, and quote the numerals, in order that a more definite understanding of appellant's ap-

plication might be considered in connection with the disclosure of the patent. We think, however, that under the circumstances it is sufficient to state the holdings of the tribunals below and briefly comment thereon, because appellant has wholly failed to convince us that the decision appealed from should be reversed.

The examiner said in part: "Claims 10 and 11 were rejected as unpatentable over Schneider. Schneider discloses a propeller in which the pivot 15 or point N in Fig. 1 may be moved to any position within the area of the circle which has ON as a center. It should be noted with respect to Fig. 1 that the blades EA, Fig. 1, are always tangential to circle K *at both* ends of the diameter on which the point N is located. This tangential point is the same as the point of zero position referred to in this application. Since pivot N may be positioned anywhere within the circle which ON is the radius, a point may be found to satisfy the zero position recited in claims 10 and 11 merely by shifting the pivot N until the desired position is reached." (Italics quoted.)

Notwithstanding all the explanation and arguments that have been made on both sides, and the statement by the board, we think the above-quoted holding of the examiner states the exact situation presented here.

The board, upon reconsideration, had the following to say:

"While appellant's claims may not be said to be drawn to a single means defined by function, as we stated in our decision, it is our view, nevertheless, that an inventor may not describe a machine which will perform a certain function and claim the function itself as the only distinguishing feature over a prior patent which is fully capable of performing such function without structural modification. That is the situation here since the mode of operation of the propeller as disclosed in this case involves nothing more than a matter of adjustment of the blades by one and the same means disclosed in appellant's patent into a position in which they operate at maximum efficiency.

"Insofar as claim 11, and claim 10 as well, defines anything over the art, the distinction is one of an inherent function of an old means, namely the positioning of blades at a certain angle and it is considered that the public should be permitted, as a matter of right, to make the adjust-

 

ment claimed or any other adjustment of the blades for any purpose it sees fit when the patent expires."

Appellant's patent, which expires in August of this year, discloses the same general arrangement of rotating housing and adjustable blades as does the application involved here, but the specific blade adjusting means is different in the device of the application. The adjustment of the blades is for the purpose of causing them to be in such a position at a certain period of their revolution as will pull in the water and then feather out at the proper time to relieve any drag and at the same time assist in keeping the boat on its proper course.

Addressing his attention to this phase of the case, the Solicitor for the Patent Office takes the position, and we think properly so, that the patented structure can be so adjusted as to locate the zero position of the blade as called for in the appealed claims; that, after all, what appellant now seeks is a patent for making an adjustment of the blades of his old disclosure; and that the adjustment means which are alleged to bring about a new result were disclosed in the patent. In other words, it is the position of the Solicitor, and that of the tribunals below, that when all confusing matter is discarded, the conclusion is obvious that appellant's claims call for nothing more than the adjustment of his old device by using the very same means in which other adjustments were previously taught.

Even if it is assumed that a readjustment in accordance with the alleged critical limitations in the claims brings a new and useful result not known or contemplated by appellant when he filed the application which ripened into his patent, it does not necessarily follow that he can now obtain a new article patent merely because he has discovered a new usefulness in a new adjustment of an old device. We are of the opinion that it is immaterial whether claims which merely define this difference between the application and the patent are functional in the sense in which the tribunals below have discussed them.

We have carefully considered the earnest contentions of appellant's counsel, representing the Alien Property Custodian, that the application discloses invention; but we are of the opinion that if the application does disclose an invention over that disclosed in appellant's patent, it is not defined by the appealed claims. We must there-

fore hold that the board properly affirmed the action of the examiner in rejecting them.

The decision appealed from is affirmed. Affirmed.